In the Matter of THOMAS E. RADICH, Respondent, v COUNCIL OF THE CITY OF LACKAWANNA et al., Appellants.

Fourth Department, May 25, 1983

**APPEARANCES OF COUNSEL**

*Burd & McCarthy* (*Timothy McCarthy* of counsel), for appellants.

*Magavern, Magavern, Lowe, Beilewech, Dopkins & Fadale (James Magavern* and *Marianne E. Hanley* of counsel), for respondent.

OPINION OF THE COURT

SCHNEPP, J.

The central issue on this appeal is whether succession to the office of Mayor of the City of Lackawanna in the event of a vacancy is governed by section 2-a of the General City Law or by section 4.2 of the Charter of the City of Lackawanna. While the State law provides that the president of the city council is to succeed to the office, the city charter, under the circumstances here, empowers the council to appoint a successor.

■ The underlying facts are not complicated. In the general election held in November, 1979 Edward J. Kuwik was elected Mayor and petitioner Thomas E. Radich was elected president of the city council, each for a four-year term. On January 6, 1983 Kuwik resigned as Mayor, and Radich, claiming succession to the office under the General City Law, filed his oath of office as Mayor. Later that day the council appointed respondent Anthony Mingarelli to the position pursuant to the city charter, and he also filed an oath of office. As a result of these events the City of Lackawanna found itself with two individuals claiming to be Mayor. Petitioner then commenced this CPLR article 78 proceeding for a judicial determination that he had succeeded to the office of Mayor upon Kuwik's resignation and for an order prohibiting the council and Mingarelli from interfering with his performance of the duties of Mayor. For the reasons which follow, we agree with Special Term that section 2-a of the General City Law supersedes and pre-empts any local law or city charter provision to the contrary and that petitioner Radich is the proper successor of Kuwik to the office of Mayor.

As relevant to the facts in this case, subdivision 1 of section 2-a of the General City Law (as added by L 1952, ch 356, eff March 29, 1952) provides that, in every city in which the Mayor and the president of the local legislative body are elected (1) at-large, (2) at the same time and (3) for the same term, upon the resignation of the Mayor the

powers and duties of the office shall devolve upon such president for the residue of the term and "he shall serve as and be the mayor". In 1963 the provisions of this section were made applicable throughout the State "notwithstanding * * * any inconsistent provisions of * * * any local law, ordinance, or city charter heretofore or hereafter adopted." (General City Law, § 2-a, subd 3 [as amd by L 1963, ch 985, eff May 3, 1963].)

The City of Lackawanna became subject to section 2-a of the General City Law with its adoption in 1978 of Local Law No. 3 which requires the at-large election of the president of its city council at the same time and for the same term as its Mayor. Mayoral succession had been governed prior to that time by a city charter provision enacted in 1909 which established that vacancies in the office of Mayor be filled by appointment of the council. The original charter was amended in 1963 to its current form which empowers the council to "elect" a successor "of the same political affiliation as the mayor, other than one of its members, to serve as mayor for the remainder of the unexpired term" unless the vacancy occurs "during the first or second years [sic] of the term of office and not less than sixty (60) days prior to the general election in that year", in which case the vacancy "shall be filled at such general election by election for the remainder of the unexpired term[1]." (Lackawanna City Charter, § 4.2.)

The dispute here arises because subdivision 3 of section 2-a of the General City Law was amended in 1980 to allow for the following exemption from the application of the general rule of mayoral succession expressed in subdivision 1: "a city charter provision in effect before November fifth, nineteen hundred seventy-five which provides for a vacancy in the office of mayor to be filled in at the next general election if the vacancy occurs before the twentieth day of September and otherwise in the general election held in the following year shall prevail over this section

---

1. The city charter also provides that "[w]here the vacancy occurs within five (5) days before the last day to file nominating petitions for the primary election for such general election, it shall be filled upon nominations made in the manner provided by law for the filling of vacancies in primary nominations occurring after the primary election." (Lackawanna City Charter, § 4.2.)

and a vacancy in the office of mayor shall be filled as provided in such a charter provision." (L 1980, ch 191, § 1.)

Appellants Mingarelli and the city council make essentially the following arguments on this appeal: (1) that the City of Lackawanna is exempt from section 2-a of the General City Law by the terms of the 1980 amendment to subdivision 3 and (2) that subdivision 1 of section 2-a of the General City Law is an invalid "special law" which violates the home rule provisions of article IX of the New York State Constitution.[2] Neither argument has merit.

A statutory exception must be strictly construed so that the major policy underlying the legislation is not defeated. Exceptions extend only so far as their language fairly warrants, and all doubts should be resolved in favor of the general provision rather than the exception (McKinney's Cons Laws of NY, Book 1, Statutes, § 213; 56 NY Jur, Statutes, § 248). Based on our analysis, we hold that the 1980 amendment of section 2-a of the General City Law is a specific and narrow exception to the general rule of mayoral succession otherwise established by this section and that the amendment does not apply to section 4.2 of the City Charter of Lackawanna and does not exempt Lackawanna from the provisions of section 2-a, even though the charter provision existed prior to 1975.

In the first place, the terms of the charter are patently inconsistent with those called for in the exception. The critical difference is that the charter allows for mayoral succession by appointment when a vacancy occurs, such as here, during the third or fourth year of the term while the exception applies only to charter provisions which require the filling of the vacancy by an election; the exception makes no provision for any other method of succession.

The express terms of the charter also do not match those called for by the exception in another respect. The cutoff date of 60 days prior to the election specified in the charter deviates from the September 20th date specified in the exception. Even if the city charter were construed to impose the September 20th cutoff date so as to be consistent

---

**2.** Although there is some question whether the constitutionality of section 2-a of the General City Law was raised at Special Term, in view of the importance of this issue, any doubt has been resolved in favor of our ruling on it.

with the provisions of subdivision 1 of section 42 of the Public Officers Law, the appointment aspect of the charter provision still remains in contradistinction to the terms of the exception.

Furthermore, since the exception applies only to city charter provisions in effect prior to November 5, 1975, the identity of any charter meeting its conditions should have been known at the time of the exception's enactment. Although the exception does not specify any charter by name, the legislative history and the extrinsic evidence submitted in the record indicates that the exception was tailored for New York City (NY Legis Ann, 1980, pp 90-91). The terms of the Lackawanna City Charter do not match those set forth in the exception, and appellant has not pointed to any other charters which would. Thus, appellant's argument that the exception was not intended to apply to New York City alone, in our view, fails.

Appellants' related argument that under general policy considerations Lackawanna should be exempt from the application of the mayoral succession rules set forth in section 2-a is also without merit. If the general policy underlying the filling of vacancies in office is to ensure maximum control by the local electorate (see NY Const, art XIII, § 3; Public Officers Law, § 42, subd 1) excluding the City of Lackawanna from the exception does not contravene that policy. Application of section 2-a here ensures that the Mayor's successor is an official elected by the same constituency as the Mayor. In contrast, the Lackawanna City Charter does not require, under the circumstances of this case, that the Mayor be succeeded by an elected official. In adopting section 2-a the Legislature merely provided for the manner of selection of a mayoral successor and did not usurp the power of local governments to select their officers or disenfranchise the local electorate (see NY Const, art IX, § 1, subd [b], formerly NY Const, art X, § 2).

The more difficult question posed in this case is whether the application of the mayoral succession rule in subdivision 1 of section 2-a of the General City Law violates the home rule provisions of article IX of the New York State Constitution. Article IX, which was adopted on November 5, 1963 and became effective on January 1, 1964, gave each

local government the specific grant of legislative authority "to adopt and amend local laws [relating to the] * * * mode of selection and removal * * * of its officers" (NY Const, art IX, § 2, subd [c], cl [ii], subcl [1]; Municipal Home Rule Law, § 10, subd 1, par [ii], cl a, subcl [1]; see, also, NY Const, art IX, § 1, subd [b]). Article IX (§ 3, subd [b]) however, provides that "[t]he provisions of [article IX] shall not affect any existing valid provisions of acts of the legislature or of local legislation and such provisions shall continue in force until repealed, amended, modified or superseded in accordance with the provisions of this constitution."

Section 2-a of the General City Law, which was enacted in 1952 (L 1952, ch 356), was a valid existing law when article IX became effective in 1964, less than one year after the 1963 amendment of section 2-a (L 1963, ch 985, eff May 3, 1963). The power of the Legislature to enact section 2-a derived from then section 8 of article XIII of the 1938 New York State Constitution (now renum art XIII, § 3, Nov. 6, 1962, eff Jan. 1, 1963) which stated that "[t]he Legislature shall provide for filling vacancies in office". This constitutional enactment was interpreted as applicable to all elective city offices (*Matter of Burke v Cohen,* 265 NY 210; see, also, *Matter of Ross v Cohen,* 283 NY 388, 391).

Section 2-a did not run afoul of home rule merely because it was not applicable to every city in the State. The Legislature has been long empowered "to act in relation to the property, affairs or government" of any city by general law (NY Const, art IX, § 2, subd [b], par [2], formerly NY Const, art IX, § 11). A "general law" is defined as "[a] law which in terms and in effect applies alike to all counties * * * all cities, all towns or all villages." (NY Const, art IX, § 3, subd [d], par [1].) An act is deemed general if it applies uniformly to a class, entry into which is governed by conformity or compliance with specified conditions related to the subject of the statute (see *Uniformed Firefighters Assn. v City of New York,* 50 NY2d 85, 90; see, also, *Johnson v Etkin,* 279 NY 1; cf. *Farrington v Pinckney,* 1 NY2d 74, 78-81). A "special law" is one which specifies conditions that serve only to designate and identify the

place to be affected and which creates a purported class in name only (see NY Const, art IX, § 3, subd [d], par [4]; cf. *Farrington v Pinckney, supra,* p 81).

Section 2-a was a general law when enacted because its specified conditions are common to the class which it creates and are related to the subject of the statute. It applies only to cities which elect the president of their legislative body (1) at-large, (2) at the same time and (3) for the same term as their Mayor. These conditions create a recognizable class of cities with special uniformity in the method of electing their chief executive and chief legislative officers. Contrary to appellants' arguments, the fact that the class so created does not include every city in the State does not make section 2-a a special law (see *Uniformed Firefighters Assn. v City of New York,* 50 NY2d 85, 90, *supra; Hotel Dorset Co. v Trust for Cultural Resources of City of N. Y.,* 46 NY2d 358, 368-369, n 3; *Adler v Deegan,* 251 NY 467). Any city is free to enact local legislation changing the mode of election of local officials to one that meets the statute's conditions. Absent a showing that other cities could not meet the statutory specifications "or absent a finding to that effect which could be made as a matter of law, a court is in no position to hold this legislation unconstitutional as special legislation" (*Hotel Dorset Co. v Trust for Cultural Resources of City of N. Y., supra,* p 368).

Moreover, appellants' reliance upon *Matter of Resnick v County of Ulster* (44 NY2d 279), as a basis for their contention that the method of mayoral succession is a matter of purely local concern, is misplaced. We recognize that the home rule provisions must be interpreted liberally and that local governments are vested with broad power to deal with the mode of selection of their officers. However, in this case, unlike *Resnick,* there is a clearly articulated decision by the Legislature, directly related to the subject matter of the Lackawanna City Charter, to control the manner of mayoral succession in certain cities and to pre-empt local legislation on the matter (see *Matter of Resnick v County of Ulster, supra,* p 287).

"It is well established that the home rule provisions of article IX do not operate to restrict the Legislature in acting upon matters of State concern." (*Matter of Kelley v*

*McGee,* 57 NY2d 522, 538.) "[I]n areas of State-wide significance, the State may freely legislate, notwithstanding the fact that the concern of the State may also touch upon local matters * * * Thus, such State legislation which also affects local concerns does not implicate local governmental home rule powers". (*Matter of Kelley v McGee, supra,* p 538; see, also, *Uniformed Firefighters Assn. v City of New York,* 50 NY2d 85, 90, *supra; Hotel Dorset Co. v Trust for Cultural Resources of City of N. Y.,* 46 NY2d 358, 372, *supra; Wambat Realty Corp. v State of New York,* 41 NY2d 490, 494.) So long as there exists a substantial degree of State interest in the subject matter of the legislation, evidence of local concern is of no consequence.

The State's interest in "filling vacancies" in local offices is long standing (NY Const, art XIII, § 3, formerly art XIII, § 8; *Matter of Ross v Cohen,* 283 NY 388, *supra*). The primary goals of the legislation which added section 2-a of the General City Law were to provide desirable executive continuity, to avoid the expense of unnecessary special elections, and to permit the orderly presentation of election issues. (NY Legis Ann, 1952, p 369; see, also, memorandum of Governor on approving L 1963, ch 985, NY Legis Ann, 1963, p 475). These are valid State concerns. Moreover, it is not unreasonable that the State should be concerned with the orderly succession of local governmental executives who must act responsibly in accordance with State as well as local law and who inevitably must deal with matters of State concern and with State officials. After all, "[a] local government is merely a political subdivision created by the sovereign State. As such, it exercises its powers subject to the direction and control of the State" (*Town of Black Brook v State of New York,* 41 NY2d 486, 488).

Finally, we observe that in providing that the term of office of the Mayor's successor shall be for the "residue" of the Mayor's term, section 2-a of the General City Law arguably may violate section 3 of article XIII of the New York State Constitution which states that "no person appointed to fill a vacancy [of an elective office] shall hold his office by virtue of such appointment longer than the commencement of the political year next succeeding the first

annual election after the happening of the vacancy."[3] We need not reach this issue, however, since under the facts in this case the president's term of office as the Mayor's successor will not exceed the constitutional limitation. He succeeds only to the last year of the Mayor's term and will not hold this office longer than January 1, 1984, since the office of Mayor will be filled at the November, 1983 general election. In any event, a statute in violation of section 3 of article XIII is not unconstitutional in its entirety but only to the extent that it permits appointment for a term longer than is authorized by the Constitution (*Matter of Roher v Dinkins,* 32 NY2d 180; see, also, *Matter of Ross v Cohen,* 283 NY 388, *supra*).

■ Thus, we conclude, that the presumption that section 2-a of the General City Law is constitutional has not been upset by proof persuasive beyond a reasonable doubt (see *Montgomery v Daniels,* 38 NY2d 41) and that the "Legislature has investigated and found facts necessary to support the legislation". (*Hotel Dorset Co. v Trust for Cultural Resources of City of N. Y.,* 46 NY2d 358, 370, *supra.*) The Legislature enacted section 2-a pursuant to the power vested in it by the Constitution to address a matter which is of State concern. It enacted a general law which must prevail over inconsistent local laws or city charter provisions. Further, since the law was valid when the home rule provisions of the Constitution were adopted, it has not been affected by those provisions and remains in effect as amended.

Accordingly, the order and judgment appealed from should be affirmed.

CALLAHAN, J. P., DENMAN and BOOMER, JJ., concur.

Order and judgment unanimously affirmed, with costs.

---

**3.** The same alleged infirmity is found in section 4.2 of the Lackawanna City Charter, since under certain circumstances the charter authorizes the council to appoint a successor for the "unexpired term" of the Mayor. In view of our determination in this case, however, this issue is collateral and need not be addressed.