PRESIDENTS' COUNCIL OF TRADE WASTE ASSOCIATIONS, INC., et al., Petitioners, v CITY OF NEW YORK et al., Respondents.

PRESIDENTS' COUNCIL OF TRADE WASTE ASSOCIATIONS, INC., et al., Petitioners, v CITY OF NEW YORK et al., Respondents.

Supreme Court, New York County, December 8, 1988

APPEARANCES OF COUNSEL

*Stein, Davidoff & Malito (Howard Weiss* of counsel), for petitioners. *Peter L. Zimroth, Corporation Counsel (Daniel Turbow* and *Julian Bazel* of counsel), for respondents.

OPINION OF THE COURT

DAVID B. SAXE, J.

The two petitions considered here represent part of a continuing series of challenges raised by commercial carters of waste and refuse, against actions taken by various agencies of the City of New York with regard to rates charged by the

carters and fees charged to them. Specifically, the petitioners seek an order vacating and annulling (1) the decision of the Commissioner of the Department of Consumer Affairs, which denied the petitioners' application for rate increase, and (2) a Board of Estimate resolution increasing the "dump fee" or "tipping fee" charged to private carting companies for the dumping of waste at the city's waste disposal facilities. The petitions are combined for disposition here.

In June 1988, the Board of Estimate increased by 116% the tipping fee charged by private waste haulers disposing of waste of city disposal facilities. The petitioners now allege that the Board of Estimate employed flawed methodology to arrive at this increased fee, rendering the Board's result arbitrary and capricious. Petitioners further contend that in increasing the tipping fee the Board of Estimate improperly failed to follow the requirements of the State Environmental Quality Review Act (SEQRA) and New York City's implementing regulations.

■ The latter contention must be rejected at the outset. I view the Board of Estimate's action in regard to the tipping fee as a routine or continuing agency administrative function, which does not require any procedure under SEQRA *(see,* 6 NYCRR 617.13 [a]; *Matter of Village of Tully v Harris,* 119 AD2d 7, 12).

■ The next question is whether the Board of Estimate's determination increasing the tipping fee was unjustified or excessive. I begin with the observation that the setting of these fees, as has been noted with respect to utility rates, "presents 'problems of a highly technical nature' ", appropriately left to the expertise of the administering agency *(see, Matter of Abrams v Public Serv. Commn.,* 67 NY2d 205, 211-212). The court's province in review is, therefore, best limited to determining whether the rate or fee lacks a rational basis *(supra,* at 212).

The petitioners challenge the methodology by which the Board arrived at the increase. Specifically, they submit an expert's affidavit asserting that the city improperly included in the fee a depletion charge representing amortization of a future disposal facility, as well as a charge for the current value of the landfill site; they term this "double counting". They also argue that the sample upon which the Board relied in assessing the fair market price for the use of city disposal sites was biased in that it was based upon counties whose

landfills were already depleted, and based in part upon illegally inflated rates in other counties.

The city has submitted an affidavit disputing those challenges and their basis in fact. First it explains that the depletion cost included in the calculations accounts only for the fact that each additional ton of waste disposed of at the landfills brings forward the date at which replacement technology will be needed; it does not, the respondent asserts, charge today's users of the landfill for the cost of the planned future replacement facility. Upon review of the explanation offered by the respondents for the depletion charge, I conclude that the petitioners have failed to sustain their burden of demonstrating its asserted irrationality.

The question of what sample the Board should have employed to determine market waste disposal prices is an issue on which neither party presents an irrational approach. After fully reviewing the submissions and contentions, I can only conclude that on this point too, the petitioners have not sustained their burden of demonstrating the lack of a rational basis.

I turn to the proceeding challenging the denial of the rate increase sought by the petitioners. The petitioners assert that the sought increase in the rates permitted to be charged for the collection and removal of refuse by the petitioners was necessitated by the 116% increase in the tipping fee as discussed above. The decision of the Commissioner of Consumer Affairs denied the petitioners' rate increase petition and set new maximum rates, which rates the petitioners now claim are insufficient to provide them with the requisite fair and reasonable return (see, Administrative Code of City of New York § 20-335 [a]).

The petition's first cause of action alleges that by excluding the tipping fee from the operating costs upon which profits are calculated, the Commissioner acted in an arbitrary and capricious manner, since all costs are includable in operating expenses for the purpose of rate-setting. Petitioners further explain that due to the magnitude of the new tipping fee, the carters will incur additional costs such as a higher incidence of bad debts and increased interest, which will reduce their actual profits below the return ostensibly provided for by the allowed rate. The second cause of action of the petition alleges that the maximum rates as ordered by the Commissioner constitutes a violation of due process as an undue interference

with the petitioners' property. The final cause of action alleges that the new maximum rate schedule represents an unconstitutional taking of the carters' property.

The crux of the petitioners' argument is that by excluding the tipping fees from the operating costs considered in calculating the amounts upon which the petitioners' 11% profit margin is determined, the Commissioner is drastically reducing the carters' actual profit margin, which endangers the economic viability of many of the petitioners.

The powers and responsibilities of the Commissioner with regard to the rates challenged here are set forth in Administrative Code of City of New York, title 20, chapter 2, subchapter 18. Private sanitation companies must obtain licenses and permits from the Commissioner of Consumer Affairs (Administrative Code § 20-332), and no licensee may charge rates for commercial refuse removal in excess of the maximum rates fixed by the Commissioner (Administrative Code § 20-335). The Commissioner is empowered to fix and, from time to time, to refix maximum rates, which rates must be based upon a "fair and reasonable return to the licensee" and must protect those using the facilities of the licensees from "excessive or unreasonable charges" (Administrative Code § 20-335 [b]).

■ Setting these rates, as noted above regarding the tipping fee, "presents 'problems of a highly technical nature' ", appropriately left to the expertise of the administering agency, and review is limited to the question of whether the determination is arbitrary and capricious or lacking in a rational basis, and whether the rate is just and reasonable (see, Matter of Abrams v Public Serv. Commn., 67 NY2d 205, 212-213 supra).

The applicable regulations contain no provision dictating the method by which the agency must decide the requisite fair and reasonable rate. Nevertheless, the petitioners assert that the alteration of the manner in which the Commissioner calculated their allowable return constituted an arbitrary and capricious abuse of discretion. They argue that there is no reasonable or rational explanation for the exclusion of the tipping fee from the sum of operating costs from which the carters' profit is calculated, and that this method of calculation is an unreasonable and irrational approach to the task of redetermining the maximum rates.

It bears emphasis that the challenged rate does include a "pass-along" of the increased tipping fee to the customers; the petitioners are not being saddled with the additional expense

of the drastically increased tipping fee. What the petitioners are challenging is the change in the method by which their allowable profit is calculated. Until 1986, when the Commissioner computed the 11% profit as part of the maximum refuse removal rates, the profit calculations were based in part upon operating costs which included tipping fees. Beginning in 1987, the profit margin included in the set maximum rates was calculated upon certain operating costs, but that year's increase in the tipping fee was excluded from the allowable profit computation; rather, the increase in the tipping fee was simply calculated into the final maximum rate as a "passed along" cost. Then, in 1988, the *entire* tipping fee was treated that way, and this challenge ensued.

The fact that in past years the Department included tipping fees in its calculation of the petitioners' operating expenses does not give the petitioners any property right, vested or otherwise, in the continued use of that methodology indefinitely *(see, Matter of National Elevator Indus. v New York State Tax Commn.,* 49 NY2d 538, 543; *Matter of Eagan v Livoti,* 287 NY 464, 468). Nor can it even be said that the carters have a property right in the 11% return as they calculate it. Rather, their interest is clearly in the nature of a need or unilateral expectation *(see, Board of Regents v Roth,* 408 US 564, 577). Consequently, their claim of "undue interference" cannot stand. Moreover, upon review of the method of calculation employed by the Department in 1988, I perceive nothing arbitrary or irrational; rather, its rationale appears to be intended and suited to protecting both the carters and the economic interests of their commercial customers. When the sharp increase in tipping fees charged by the city was economically necessitated, the Department sought a means by which it would neither add to the carters' actual expense nor saddle their customers with additional expense *beyond* the additional increase in the tipping fee.

■ I must also reject the petitioners' contention that the change in the methodology used to calculate maximum rates constitutes an unconstitutional taking of property without just compensation. The waste disposal industry is a regulated industry, subject to governmental regulations and licensing provisions. Government regulation may permissibly affect economic interests or expectations; where there is no actual acquisition, governmental action will be considered a "taking" only if the effects of the action "are so complete as to deprive the owner of all or most of its interest in the property"

*(Rochester Gas & Elec. Corp. v Public Serv. Commn.,* 71 NY2d 313, 324). The Commissioner's action cannot be said to have deprived the carters of their property to such extent as constitutes a taking.

In accordance with the foregoing, each of the petitions is therefore dismissed, and the stay previously issued is vacated.