■ PRESIDENTS' COUNCIL OF TRADE WASTE ASSOCIATIONS, INC., et al., Appellants, v CITY OF NEW YORK et al., Respondents.— Judgment, Supreme Court, New York County (David B. Saxe, J.), entered on or about December 19, 1988, which dismissed petitioners' CPLR article 78 petition, unanimously affirmed, without costs.

In a CPLR article 78 proceeding, the petitioners, private commercial carting companies, sought review of a determination of the respondent Commissioner of Consumer Affairs, dated September 13, 1988, which established the maximum rate which petitioners are permitted to charge their customers for the removal of commercial refuse. The Commissioner was acting upon an application of the petitioners, submitted on July 12, 1988, which sought increases in the fees they were permitted to charge based upon a 116% hike in the carters' costs for dumping at the city's landfill, which was authorized in June 1988 by the Board of Estimate.

The Commissioner is empowered to regulate the maximum allowable rates for commercial refuse collection by section 20-335 (b) of the Administrative Code of the City of New York. It provides in pertinent part that the Commissioner can "fix and from time to time refix maximum rates for the removal of * * * refuse * * * which rates shall be based upon a fair and reasonable return to the licensees and shall protect those using the facilities of such licensees from excessive or unrea-

sonable charges." The statute goes on to provide that those rates may be fixed and refixed by the Commissioner after public hearings, which were held in the instant case.

The maximum refuse removal rates fixed by the Commissioner are based upon the costs incurred by private carting companies, together with profits sufficient to ensure a "fair and reasonable" return. The first of the two main components of the costs incurred is the carters' actual operating expense as determined by the Commissioner based upon financial statements filed by the carters, with an average figure expressed as costs per cubic yard of refuse collected (hereinafter, total operating costs). The second cost component is the charge to the carters, expressed as the cost per cubic yard, imposed by the Department of Sanitation for the disposal of refuse at facilities operated by the Department. This cost, referred to as a "dump fee" or "tipping fee", is fixed by the Board of Estimate pursuant to Administrative Code § 16-129 (a). The tipping fee has been directly passed through to the carters' customers by adding it to the maximum rate since 1979.

In addition to the cost components, the maximum rates include a profit fixed by the Commissioner, which as previously noted, requires only that the rates established by the Commissioner be "fair and reasonable" while at the same time protecting those using the facilities from excessive or unreasonable charges, pursuant to section 20-335 (b) of the Administrative Code. Throughout all periods pertinent herein, the Commissioner has included an 11% profit in the refuse removal rates.

During the period 1980 through 1986, the 11% profit was calculated on the basis of the sum of the total operating costs and the tipping fee costs. Thus, in 1986, the maximum rate for precompacted refuse was $19.74 per cubic yard computed as follows: $6.04 for the carters' operating costs and $11.75 for the tipping fee, or a total of $17.79. The 11% profit multiple applied to the $17.79 figure yielded a profit of $1.95, for a total of $19.74.

By 1987, the Commissioner determined that a change was necessary in the methodology by which the profit was calculated, noting that the tipping fee had increased by an unprecedented 57.4% (from $11.75 to $18.50 for compacted refuse). He concluded that the carters should not earn an additional 75 cents on the tipping fee increase since such increase was not related to any increased effort on the part of the carters and was not an additional burden on them since the tipping fee costs were always passed along to the businesses which used

their services. The carters' 1987 profit thus remained the same as it had been in 1986, despite the increase in the tipping fee, to wit $1.95 per cubic yard for precompacted refuse and 92 cents per cubic yard for loose refuse.

On June 30, 1988, the Board of Estimate approved an increase in the tipping fee from $18.50 to $40 per cubic yard for precompacted refuse, a 116% increase. That increase prompted a rate increase application filed with the Commissioner on behalf of four associations of private carters claiming to represent 85% of all licensed private carters. The application requested an increase in the maximum rates for precompacted refuse to a total of $51.10 per cubic yard and sought to impose the 11% profit multiple not only on the carters' $6.04 total operating costs, but also on the $40 tipping fee. A public hearing was held on August 10, 1988, pursuant to Administrative Code § 20-335 (b), after which it was determined that the profit factor of 11% would be computed against the cost of removing a cubic yard of refuse, currently estimated at $6.04, and not on the cost of removal plus the tipping fee as was previously the case. As here pertinent, the Hearing Officer stated in her report that "Based on * * * the strong public policy against permitting unreasonable charges, I recommend against applying an 11% profit to the dump fee expense." The report of the Hearing Officer was approved by the Commissioner on September 13, 1988 and petitioners brought an article 78 proceeding to challenge that determination.

The judicial function is exhausted where there is found a rational basis for the conclusions approved by the administrative body. *(Matter of Sullivan County Harness Racing Assn. v Glasser,* 30 NY2d 269, 277 [1972].) The Commissioner's rate-making authority is analogous to that of the Public Service Commission, which is authorized to "fix just and reasonable prices, rates and charges for gas [and] electricity" (Public Service Law § 72). A rate-fixing determination will not be set aside "unless it is shown that the judgment of the [agency] was exercised 'without any rational basis or without any reasonable support in the record' ". *(Matter of Abrams v Public Serv. Commn.,* 67 NY2d 205, 212 [1986].) The petitioners failed to make the requisite showing that the Commissioner's determination was without any rational basis or without any reasonable support in the record. Again, analogizing the Commissioner's determination herein to a determination by the Public Service Commission, the court in *Abrams (supra,* at 212)* stated, "The PSC is free to entertain or ignore any

particular factor, or to assign whatever weight it deems appropriate".

We recognize that the practical result to the petitioners is a substantial reduction in their profits from those calculated in 1986 and 1987, and presumably continuing through September 1988. Thus, the carters' profit on compacted refuse has now been reduced from $1.95 to 68 cents per cubic yard. This may seem harsh from petitioners' point of view, but from their customers' point of view the carters had previously been getting a windfall profit of 11% on the tipping fee, which became more evident and burdensome to their customers as the tipping fee increased drastically over the past 10 years. That the Commissioner belatedly corrected an inequity in computing the carters' profits does not render his determination arbitrary or capricious, and calculating the carters' profits on their total operating costs can hardly be deemed irrational. Since we find that there was a rational basis for the conclusion reached by the Commissioner, we affirm the judgment of the motion court which dismissed the article 78 petition. Concur—Ross, J. P., Asch, Rosenberger, Smith and Rubin, JJ. [See, 142 Misc 2d 135.]