OPINION OF THE COURT
Phyllis Gangel-Jacob, J.
The petitioners private commercial carting companies (the carters) bring this CPLR article 78 proceeding by order to show cause with a temporary restraining order (TRO) for a judgment vacating, annulling and setting aside the new lower maximum rates adopted by the respondent Commissioner (Commissioner) of the New York City Department of Consumer Aifairs (Department) for the collection of commercial refuse. They seek a preliminary injunction enjoining respondents from enforcing the contested rates adopted by the Commissioner. Pending expedited determination of this petition, the court continued the TRO contained in the order to show cause.
The carters are required to be licensed by the Commissioner (Administrative Code of City of New York § 20-332 [a]). Section 20-335 (b) of the Administrative Code empowers the Commissioner to regulate the maximum allowable rates that the carters may charge for commercial refuse collection, and provides in relevant part that the Commissioner can "fix and from time to time refix maximum rates for the removal of * * * refuse * * * which rates shall be based upon a fair and reasonable return to the licensees and shall protect those using the facilities of such licensees from excessive or unreasonable charges”. The statute further provides that the rates may be fixed and refixed by the Commissioner after public hearings, which were held in this case, at which "[interested persons shall have the right to appear * * * and adduce evidence” (Administrative Code § 20-335 [b]).
By notice of public hearing dated December 5, 1990, the Department announced its proposal to refix the carters’ maximum rates. Pursuant to the notice which was published in the City Register and mailed to all interested persons, a public hearing on the proposed new maximum rates was conducted on January 7, 1991. Written comments were invited and submitted by the carters’ representatives and testimony was presented at the hearing by a Department Deputy Commissioner, numerous representatives of customers of the carters and representatives of the carters. Thereafter the Commissioner adopted the new maximum rates.
*45 The rates were decreased from $14.70 per cubic yard to $13.60 per cubic yard for loose refuse collected, and from $46.70 per cubic yard to $45.60 per cubic yard for precompacted refuse collected (the new rates). The new rates were adopted by the Commissioner on or about March 30, 1991 with an effective date of May 6, 1991. This article 78 proceeding ensued.
The maximum refuse removal rates fixed by the Commissioner for loose (noncompacted) refuse and precompacted refuse are based upon two main components of costs incurred by the carters, i.e., (i) the carters’ actual operating costs as determined by the Commissioner with reference to the annual financial statements required to be filed by the carters with the Department, with an average figure expressed as costs per cubic yards collected, and (ii) the waste disposal costs incurred by the carters in disposing of the refuse collected (also referred to as tipping fee), based on the volume in cubic yards of refuse dumped by the carters. The waste disposal cost is calculated by the Department by determining the average tipping fee paid by the carters to landfill owners and dividing it by a "compaction ratio” to allow for a reduction in volume that occurs when the refuse collected is compacted prior to dumping. To ensure a "fair and reasonable return”, an 11% profit margin is included in the cost of collecting a cubic yard of refuse.
The petition sets forth three causes of action. The first alleges that the Commissioner adopted the rates in violation of lawful procedure and in violation of petitioners’ due process rights in that (i) the procedures set forth in section 20-335 (b) of the Administrative Code and the City Administrative Procedure Act § 1046 (entitled "Adjudication”, which establishes minimum procedures for making final determinations in cases where a decision by a city agency to determine a legal right of a named party is required by law to be on a record after an opportunity for a hearing) were not followed, and (ii) the petitioners were denied their statutory and constitutional right to participate meaningfully in the rate-making process by not being permitted to engage in discovery, utilize cross-examination or otherwise adduce evidence from the Department and its employees.
The second cause of action alleges that the legislation authorizes the Commissioner to fix maximum allowable rates without providing sufficient guidance as to the standards to be *46 employed, which constitutes an unconstitutional delegation of legislative authority to the Commissioner. The third cause of action alleges that the new rates are irrational, unreasonable, arbitrary and capricious in that the new rates purportedly are based on error, irrelevant data and assumptions that are without evidentiary support in the record, including the Department’s determination that company officers’ salaries as a cost item should be limited to a single officer per company and its determination of the reasonable amounts thereof; the assumption that labor costs have increased by only 5%; the failure to adjust most costs for 1990 and all costs for 1991; the assumption that fuel prices have increased by only 23%; the assumption that all waste is collected in noncompacted form; and the adjustment to the tipping fee once the average actual costs of dumping were calculated (which petitioners also assert are erroneous). Petitioners contend that the methodology and statistical techniques used by the Department to calculate operating costs on the one hand and the compaction ratio as a determinative element of waste disposal costs on the other, were arbitrarily inconsistent, designed to achieve the most unfavorable results to the carters for each component, and based on defective data. Petitioners assert that the Department’s refusal to include the 11% profit component in its calculation of the tipping fee was unjustified and calculated to deprive the carters of a "fair and reasonable return”.
Respondents contend that the fixing of rates is an exercise of the agency’s quasi-legislative function which does not give rise to any constitutional right to an adjudicatory hearing, that it fully complied with section 20-335 (b) of the Administrative Code in conducting the public hearing in accordance with City Administrative Procedure Act § 1043 (which authorizes and establishes rule-making procedures in accord with an agency’s quasi-legislative authority to adopt rules after public informational hearings), that petitioners had the opportunity to meaningfully participate in the rate-making process and they submitted extensive comments and testified at the public hearing, and that the Department has supplied full detail of the basis for the rate determination. Respondents also assert that the power to fix maximum rates has been lawfully delegated to the Commissioner in that the enabling statute’s mandate that rates fixed by the Commissioner "be based upon a fair and reasonable return to the licensees and shall protect those using the facilities of such licensees from *47 excessive or unreasonable charges” (Administrative Code § 20-335 [b]) is a lawful standard.
Respondents contend that the Department’s calculations of the new rates comport with the statutory standard in that they are designed to provide a fair and reasonable return to the carters while protecting consumers from excessive or unreasonable charges; that the new rates are lower because of the lower over-all costs of the carting industry as a function of lower tipping fees and recycling; that the new rates are based upon an analysis of the books and records of a representative sample of the industry and information contained in the 1989 financial statements filed with the Department; that the old rates had been based on a $40 tipping fee charged by the City for the use of the City’s dumping facilities but by December 1988 the carters’ use of the City’s dumping facilities had declined to approximately 10% of their prior use in favor of cheaper facilities elsewhere and that there is an increased separation of recyclable materials which reduces the volume of refuse and waste disposal costs, and that these required an adjustment in the maximum rates in accordance with the statute. Respondents contend the new rates are now based on actual tipping fees paid by the carters, which information was derived from industry data; that it relied on the carting industry data made available to it in making its calculations including, inter alla, reviewing the financial statements of the 65 companies comprising its sample in assessing industry costs and making appropriate adjustment to exclude data or companies supplying data not relevant to the rate components at issue, conducting detailed audits of 30 companies to verify the reliability of the data and examining the books and records of 46 companies to ascertain waste disposal expenses. In addition, in respect of some aspects of its methodology respondents paid heed to and modified and incorporated past recommendations of industry representatives, including recommendations concerning reasonable officers’ salaries and method of computing compaction ratio. For other aspects of its determination the Department relied on internal and outside studies and surveys in applying, among other things, the special fuel adjustment, the upward adjustment of the tipping fees and the compaction ratio.
Respondents contend that travel and entertainment have traditionally been excluded from calculating operating expenses as discretionary expenses that do not necessarily relate to the generation of revenue and are difficult to verify, and its *48 refusal to award the carters an 11% profit on the tipping fee is justified in that the new rates include a pass-along of the tipping fee to the consumers and that this issue has already been decided adversely against the carters (see, Presidents’ Council of Trade Waste Assns. v City of New York, 159 AD2d 428).
Petitioners’ due process claims are without merit. Respondents’ decision not to allow discovery and cross-examinatian was soundly based on section 20-335 (b) of the Administrative Code which merely requires that interested persons be afforded the right to appear and adduce evidence. No adjudicatory hearing was required. There is no question that the Commissioner’s duty to fix rates is a legislative duty exercised pursuant to the Commissioner’s rule-making authority. The statute provides that rates shall be fixed and refixed after "public hearings” at which "interested persons” have the right to appear and give evidence. Adversarial parties are not contemplated. The "interested persons”, including petitioners, need only be given the opportunity to be heard and to submit whatever evidence or comments they choose. The Department may consider the evidence at hand whether obtained through the hearing or by written submissions, but is not required to reply or revise a rule in respect thereof (see, e.g., Matter of Owners Comm. on Elec. Rates v Public Serv. Commn., 76 NY2d 779, revg for reasons stated in dissenting opn 150 AD2d 45; Matter of Abrams v Public Serv. Commn., 67 NY2d 205; Matter of New York Tel. Co. v Public Serv. Commn., 64 AD2d 232; City Administrative Procedure Act § 1043; cf., Matter of Colton v Berman, 21 NY2d 322). Matter of Lakeland Water Dist. v Onondaga County Water Auth. (24 NY2d 400) is not to the contrary. Moreover, in this case the record shows that petitioners were given the opportunity to participate meaningfully in the rate-making process as conducted by the Commissioner under Administrative Code § 20-335 (b).
In determining whether due process standards have been met the court must balance three factors. First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government’s interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail (Morgenthau v Citisource, Inc., 68 NY2d 211). The procedures for fixing the *49 maximum rates for the removal of commercial refuse set forth in Administrative Code § 20-335 (b) satisfy this test. They adequately safeguard the private interests of the petitioners and minimize the risk of erroneous deprivation while serving the substantial government interest in regulating the waste removal process. The court finds that the rates at. issue were adopted in accordance with lawful procedure, and petitioners’ first cause of action is dismissed.
The court also finds that the authority to fix maximum allowable rates has been lawfully delegated to the Commissioner and does not, as petitioners contend, constitute an unconstitutional delegation of legislative authority. "[L]egislative enactments are presumed valid and * * * one who challenges a statute bears the burden of proving the legislation unconstitutional beyond a reasonable doubt” (Rochester Gas & Elec. Corp. v Public Serv. Commn., 71 NY2d 313, 319-320). In this regard, the Legislature may commit to an administrative board the power to determine a reasonable tariff of rates (Matter of Trustees of Vil. of Saratoga Springs v Saratoga Gas, Elec. Light & Power Co., 191 NY 123). Petitioners have not met their burden.
The setting of maximum allowable rates " 'presents "problems of a highly technical nature” ’, appropriately left to the expertise of the administering agency” (Presidents’ Council of Trade Waste Assns. v City of New York, 142 Misc 2d 135, 139, affd 159 AD2d 428, supra; Matter of Abrams v Public Serv. Commn., supra). The standards set forth in Administrative Code § 20-335 (b) that the rates set by the Commissioner "be based upon a fair and reasonable return to the licensees and shall protect those using the facilities of such licensees from excessive or unreasonable charges” are appropriate and lawful (see, Matter of Trustees of Vil. of Saratoga Springs v Saratoga Gas, Elec. Light & Power Co., supra; Matter of Levine v Whalen, 39 NY2d 510; Matter of Shattenkirk v Finnerty, 97 AD2d 51, affd 62 NY2d 949). Accordingly, petitioners’ second cause of action is dismissed.
In respect to petitioners’ third cause of action, the question before the court is whether there is a rational basis for the Commissioner’s determination in setting the new rates. "A rate-fixing determination will not be set aside 'unless it is shown that the judgment of the [agency] was exercised "without any rational basis or without any reasonable support in the record” ’. (Matter of Abrams v Public Serv. Commn., 67 *50 NY2d 205, 212 [1986].)” (Presidents’ Council of Trade Waste Assns. v City of New York, 159 AD2d, at 430, supra.)
The issue is neither the truth nor the accuracy of the proof upon which the Department based its determination. It is, rather, the reasonableness of the Department’s conclusions. Where such administrative determinations are made by the agency responsible for the administration of the law, the court is not to substitute its judgment for that of the agency. Even though the court might have decided differently were it in the agency’s position, the court may not upset the agency’s determination in the absence of a finding that the determination has no rational basis (Matter of Montauk Improvement v Proccacino, 41 NY2d 913; Matter of New York Tel. Co. v Public Serv. Commn., 64 AD2d 232, supra).
As set forth in Matter of New York Tel. Co. v Public Serv. Commn. (supra, at 240) the Department " 'was not bound to use any single formula or combination of formulae in determining rates * * *. Under the statutory standard * * * it is the result reached not the method employed which is controlling’ ” (accord, Matter of Abrams v Public Serv. Commn., 67 NY2d 205, supra).
A careful review of the record shows that the Department’s efforts were directed toward specifically examining and taking into consideration the actual operating costs of the industry, tipping fees, profits and related increased expenses in attempting to set a reasonable maximum rate. Its methods of calculation appear to be directed toward achieving the dual goal of affording petitioners a fair rate of return while protecting the economic interests of the consumer. The court finds there was a rational basis for the new rate determination at issue, and the third cause of action is dismissed.
Accordingly, petitioners’ application for a preliminary injunction is denied, the petition is dismissed and the TRO shall be deemed vacated on the 10th day following receipt of service of a copy of this order with notice of entry.